**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ralph Donald THARPE,
Defendant-Appellant.**

No. 75–1491.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1976.

Rehearing En Banc Granted
April 5, 1976.

Jeremy J. Eskridge, Tupelo, Miss. (Court Appointed), for defendant-appellant.

H. M. Ray, U.S. Atty., John R. Hailman, Asst. U.S. Atty., Oxford, Miss., for plaintiff-appellee.

**GEE, Circuit Judge:**

Ralph Donald Tharpe was convicted of violating 18 U.S.C. § 922(g)(1).[1] He has challenged the validity of this conviction on a number of grounds, but because of the result we reach we need only discuss one in detail—suppression of a gun which was the sole subject of the indictment against him. We conclude, on the record, that the gun was discovered during an unreasonable search and, thus, should have been suppressed as evidence. It follows that the conviction must be reversed.

At 6:00 p. m. on January 16, 1973, Officer Martin of the Fulton, Mississippi police department received word from his dispatcher that the Tupelo, Mississippi police department had called and advised Fulton to be on the lookout for a Pontiac GTO equipped with chrome pipes and Alabama license plates and occupied by three white males. The information relayed indicated that Raymond Hester, who had just passed some worthless checks in Tupelo, was one of three men in such an automobile. Tupelo wanted him. It happened that Officer Martin had in mind additional information concerning Hester at the time he received this call. He had seen Hester previously at the Fulton County Jail and thus knew him by sight. Also, he had been informed six days earlier that Hester and

two men identified as the Tharpe brothers, whom he did not know, were suspects in a Red Bay, Alabama burglary and that the authorities there wanted to talk to them. The Red Bay police had also mentioned that Hester and the Tharpe brothers were known burglars in Alabama.

At 6:30 p. m.—after dark—Officer Martin saw a GTO identical to the one described by his dispatcher and occupied by three white males. He stopped the car, approached the driver and asked him if he were Hester. Upon receiving a negative response, he asked to see his driver's license. It was in the name of Wiggington. By this time Martin apparently had recognized that the driver was indeed Hester and so challenged his license's assertion that he was Wiggington. Thus confronted, Hester admitted his identity. Martin immediately placed him under arrest for driving without a license. Next Martin asked the two passengers to identify themselves. When they replied that they were Ralph and Carl Tharpe, he ordered them out of the car into an area illuminated by the headlights and proceeded to pat them down. The patdown of Ralph led to the discovery of the gun.

The government, the defense and the trial court all agreed that Tharpe was not under arrest at the time he was searched[2] and that the search could in no way be justified as one made incident to a lawful arrest.[3] Nor was Officer Martin acting pursuant to warrant. The government contends, however, that the search is justified as reasonable because

---

**1.** 18 U.S.C. § 922(g)

It shall be unlawful for any person—
(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year:

\* \* \* \* \* \*

to ship or transport any firearm or ammunition in interstate or foreign commerce.

**2.** A patdown is, of course, a search. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**3.** Any arrest of Tharpe made prior to the discovery of the gun based upon either the Tupelo or Red Bay incidents would have been unlawful. Officer Martin knew about Tharpe only that he was a passenger in a car driven by a man wanted for passing bad checks and that out-of-state authorities wished to talk to him concerning a burglary.

In his testimony at the suppression hearing, Officer Martin stated that he could have arrested Tharpe for "public drunk." Such an arrest was never made.

it falls within that limited category of prophylactic patdowns authorized and defined by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). On the facts elicited at the suppression hearing, we disagree.

Once it has been established that a particular search was conducted in the absence of a warrant, "[t]he burden is upon the government to show that the search fell within one of the exceptions to the Fourth Amendment requirement of a warrant." *United States v. Cristancho-Puerto*, 475 F.2d 1025, 1027 (5th Cir.), *cert. denied*, 414 U.S. 869, 94 S.Ct. 181, 38 L.Ed.2d 115 (1973), *quoting Brett v. United States*, 412 F.2d 401, 405 (5th. Cir. 1969). *See also, e. g., Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). The manner in which this burden may be discharged has been made clear by the Supreme Court.

In *Terry*, the Supreme Court recognized that the Fourth Amendment does not preclude all warrantless, limited, patdown searches for weapons even when probable cause is lacking. It held that such searches are reasonable

. . . where a police officer observes unusual conduct *which leads him reasonably to conclude* in light of his experience that criminal activity may be afoot and *that the persons with whom he is dealing may be armed and presently dangerous,* where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, *and where nothing in the initial stages of*

the encounter serves to dispel his reasonable fear for his own or others' safety . . . .

*Terry v. Ohio,* 392 U.S. at 30, 88 S.Ct. at 1884 (emphasis added). And in *Sibron* it laid down the prerequisites:

The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts *from which he reasonably inferred* that the individual was armed and dangerous.

*Sibron v. New York,* 392 U.S. at 64, 88 S.Ct. at 1903 (emphasis added). Both opinions make it clear that the "particular facts" must be specific and articulated. And at a minimum, they also require that they must be facts which, when viewed objectively, would give rise to a reasonable belief (in a prudent, experienced officer) that the individual confronted might be [4] armed and dangerous. *Terry,* 392 U.S. at 21–22, 27, 88 S.Ct. 1868. But more, as the emphasized portions of the above-quoted passages indicate, the two cases require that the officer who conducted the patdown must actually have inferred from the facts available, in light of his experience, that the individual searched might have been [5] armed and potentially dangerous.[6]

We need not decide whether, viewed objectively, the facts available to Officer Martin concerning Tharpe and

---

**4.** There is some doubt about whether the two cases require the facts to point to the conclusion that the person to be frisked actually *is* armed and dangerous or only to the conclusion that he *might* be. *See* W. LaFave, *"Street Encounters" and the Constitution: Terry, Sibron, Peters and Beyond,* 67 Mich.L.Rev. 40, 84–88 (1968). J. M. Weisgall, *Stop, Search and Seize: The Emerging Doctrine of Founded Suspicion.* 9 U.San Francisco L.Rev. 219, 231–32 n. 69, 70 (1974). We need not address that question here.

**5.** See footnote 4 *infra.*

**6.** *Cf. Gustafson v. Florida,* 414 U.S. 260 at 266, 94 S.Ct. 488 at 492, 38 L.Ed.2d 456 (1973), in which the Court, upholding a search incident to a lawful traffic arrest, observed,

Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that Smith did not indicate any subjective fear of the petitioner or that he did not himself suspect that the petitioner was armed.

Doubtless, in referring to "fear," the Court intends reasonable grounds for apprehension, not a sliding scale calibrated in subjective boldness.

the circumstances surrounding his patdown were sufficient to sustain the search.[7] As mentioned, the burden of proof to justify the patdown was on the government. To prevail it needed to show an actual, reasonable belief[8] on the part of Martin that Tharpe might be armed and that, as a result, he, as an investigating officer, might be in danger—in other words, a well-founded belief that a patdown was necessary for his own protection. But no evidence was elicited at the suppression hearing which even approaches establishing a subjective belief on Martin's part that Tharpe might have been armed. Moreover, Martin's testimony contradicted the possibility that he believed Tharpe dangerous to him.[9] What does emerge from Martin's testimony is the distinct impression that after discovering Tharpe's identity he always intended to take him down to the station and that, as a matter of practice, he never closed people up in the car behind him without first patting them down.[10]

Since the government failed to justify the warrantless search of Tharpe it was error for the trial court to have admitted into evidence the fruit of that search, the gun.[11]

Reversed and remanded.

COLEMAN, Circuit Judge (dissenting):

This is a troublesome case. I would not strongly argue that the majority opinion is wrong but I cannot convince myself that it is right.

*Terry v. Ohio,* 392 U.S. at 30, 88 S.Ct. at 1884, laid down the rule that *"Each case of this sort will, of course, have to be decided on its own facts".* (Emphasis mine).

The facts in the case *sub judice* are quite dissimilar to those in either *Terry* or *Sibron.*

In *Terry* the police officer suspected that three men, whom he did not know and had never seen, appeared to be casing stores in Cleveland, Ohio, with a view to robbing them. The officer feared that they might have a gun. He asked their names, patted down the outside of Terry's clothing, and found a pistol in the left breast overcoat pocket. He then ordered all three of the suspects into a store, where he proceeded to pat down the outer clothing of the other two. He discovered another revolver in the outer pocket of the overcoat of a second man. All this occurred in broad open daylight. The Supreme Court sustained the validity of the search.

---

**7.** Facts which possibly indicate that Tharpe was armed were (1) the information that he was a known burglar, (2) the information that he was a suspect in a recent unsolved burglary, and (3) his current (possibly criminal) association with a man wanted for a felony committed only hours before the search. Facts which indicate possible threats to safety were the three mentioned above plus (1) Officer Martin was alone facing three men, (2) it was night and the stop took place in a poorly-lit area, (3) Martin had arrested Tharpe's companion, and (4) Tharpe had been drinking.

**8.** We reject as not compatible with Supreme Court case law the *per se* rule of the Ninth Circuit that

All companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory "patdown" reasonably necessary to give assurance that they are unarmed.

*U. S. v. Berryhill,* 445 F.2d 1189, 1193 (9th Cir. 1971).

**9.** *Cf. United States v. Kirsch,* 493 F.2d 465 (5th Cir. 1974).

**10.** Of course, as a practical matter this bespeaks good police procedure. Normally, however, before the police take someone "downtown" they arrest him. If the arrest proves lawful, a search incident to it will be held reasonable. We cannot, however, condone searches simply because an officer intends to take a suspect into custody and therefore wishes to find out if he is armed. If that were the law there would be nothing to restrain the police from patting down anyone whether or not they have either probable cause to arrest or a reasonable belief that the person whom they are investigating might be armed and dangerous.

**11.** Because we reverse we find it unnecessary to consider any of the other allegations of error except Tharpe's contention that he was denied his Sixth Amendment right to a speedy trial. Under the facts and current Fifth Circuit case law, that contention is without merit and is rejected.

*Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, was decided the same day as *Terry v. Ohio.* There, the police officer did not know Sibron, had no information about him, but did see Sibron in conversation with six or eight persons known to be narcotics addicts. Later in a restaurant Sibron was seen with three more known narcotics addicts. The officer did not overhear any of the conversations nor did he see anything pass between Sibron and the others. The Supreme Court held that the officer had no adequate grounds to search Sibron for weapons since he had no reason to believe that Sibron was armed and dangerous and even if there had been such a justification there was no initial limited exploration for arms as in *Terry.*

What are the facts in the case presently before us?

As Footnote 7 of the majority opinion points out, the officer who patted Tharpe down had information from other law officers that Tharpe was a known burglar and that he was a suspect in a recent unsolved burglary. Tharpe at the moment was in an automobile with a man wanted for a felony committed only a few hours previously. The officer was alone at night in a poorly-lighted area, facing three men. Tharpe had been drinking. The third man was another Tharpe, similarly suspected as the first.

The majority opinion says that "No evidence was elicited at the suppression hearing which even approaches establishing a subjective belief on Martin's part that Tharpe might have been armed".

I think it would have been more accurate to say that such a belief was not verbally articulated by Martin as a witness, and I also think that the belief must be clearly inferred from the action Martin took. He got Tharpe out of the automobile at once, in front of headlights, and patted him down. In the absence of a belief that Tharpe might be armed it is hard to understand why he

would have been patted down. There would have been no point in looking for weapons if the officer had no belief that they might be there.

The state of the law is such that one cannot be dogmatic about search and seizure cases. I concede that I may be wrong about it, but I can see no logic in the idea that the validity of the pat down depends upon whether a particular officer experiences actual fear for the safety of himself or others. I think the issue, as stated at 392 U.S. 27, at 88 S.Ct. 1883, is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others [is] in danger". And, in determining whether the officer acted reasonably in such circumstances, due weight must be given "to the specific reasonable inferences which he is entitled to draw from the facts in the light of his experience". Here, of course, the officer was not acting on experience alone but on very specific information.

It comes down to the point that I would hold under the circumstances patting down Tharpe was more than reasonable and I would affirm the action of the District Court in declining to suppress.

I feel that the following excerpts from *Terry* are pertinent:

"When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 392 U.S. at 24, 88 S.Ct. at 1881.

"Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the po-

lice officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Cf. Beck v. State of Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 226, 13 L.Ed.2d 142 (1964); *Brinegar v. United States,* 338 U.S. 160, 174–176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949); *Stacey v. Emery,* 97 U.S. 642, 645, 24 L.Ed. 1035 (1878). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. *Cf. Brinegar v. United States, supra.*" 392 U.S. at 27, 88 S.Ct. at 1883.

Of course, *Terry* holds that there can be no *per se* rule for the determination of cases like this. Under the circumstances here present, however, I agree with what the Ninth Circuit said in *United States v. Berryhill,* 445 F.2d at 1193:

"We think that *Terry* recognizes and common sense dictates that the legality of such a limited intrusion into a citizen's personal privacy extends to a criminal's companions at the time of arrest. It is inconceivable that a peace officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back from defendant's associate because he cannot, on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance. All companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed."

I respectfully dissent.

### ON PETITION FOR REHEARING AND PETITION FOR RE- HEARING EN BANC

Before BROWN, Chief Judge, WISDOM, GEWIN, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY, GEE and TJOFLAT, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.