**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ralph Donald THARPE, Defendant-Appellant.**

No. 75–1491.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1976.

Jeremy J. Eskridge, Tupelo, Miss. (Court appointed), for defendant-appellant.

H. M. Ray, U. S. Atty., John R. Hailman, Asst. U. S. Atty., Oxford, Miss., for plaintiff-appellee.

Before BROWN, Chief Judge, GEWIN, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY, GEE, TJOFLAT and HILL, Circuit Judges.*

DYER, Circuit Judge:

Ralph Tharpe appealed his firearms conviction contending that a pat-down search which led to the discovery of a gun was unconstitutional, and that the gun should have been excluded as evidence by the district court. A panel majority of this Court reversed, finding that the search could not be justified under *Terry v. Ohio*, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, since the officer who conducted the search did not explicitly testify that he feared he was in danger because Tharpe might be armed. 5 Cir., 526 F.2d 326 (1976). The Court took

---

* Because of illness Judge Wisdom did not participate in the hearing or in the consideration of this case. Judge Thornberry was a member of the En Banc court that heard oral arguments but due to illness did not join in this opinion.

# 1100

this case en banc because it posed a question of exceptional importance concerning the proper interpretation and application of *Terry*. We agree with the district court that under the circumstances confronting the police officer *sub judice*, the pat-down of Tharpe was a reasonable protective *Terry* search. We therefore affirm the district court.

■ Judicial analysis of a purported *Terry* search must focus on the facts known to the officer on the scene of the encounter, and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. Our concern is what the record shows the officer knew on the scene. If the officer had an objective factual basis for then thinking there was a real risk to his own safety, his later verbalization of his thoughts or feelings can hardly be dispositive of the on-the-scene reasonableness of conducting a protective search for weapons.

In *Terry* terms, the "officer must be able to point to specific and articulable facts" suggesting actual physical risk. It was obvious to the *Terry* Court that determination of the need for the frisk had to "be judged against an objective standard" because the feelings or hunches of an officer are too lacking in substance to effectively guarantee protection of constitutional rights. 392 U.S. at 21, 88 S.Ct. at 1880. The Supreme Court took pains in *Terry* to emphasize that, just as subjective whims by officers could not justify a protective frisk, so, in light of "the protean variety of the street encounter," courts must judge each individual factual context flexibly according to "the objective evidentiary justification which the Constitution requires." 392 U.S. at 15, 88 S.Ct. at 1876.

■ Our determination of the reasonableness of the facts urged to justify the search as "protective" must turn upon those objective facts known to the officer at the time. After dark, officer Martin of the Fulton, Mississippi police department stopped a car occupied by three white males. The officer was alone when he made the roadside stop. Half an hour before the stop, he had received a police radio dispatch asking him to look for a car, matching the description of the car he stopped, and known to contain Raymond Hester, who had just passed bad checks in another Mississippi town. About a week earlier the officer had been informed that Hester, along with two men, the Tharpe brothers, were suspected of an Alabama burglary. Officer Martin had previously seen Hester and knew him by sight. When he stopped the car, he asked the driver if he was Hester. The driver said he was not and showed the officer a driver's license in the name of Wigginton. Martin asked again if he was indeed Hester, and the driver then admitted his identity. Martin arrested him for driving without a license.

Officer Martin then asked the two passengers to identify themselves. When they said they were Carl and Ralph Tharpe, he told them to get out of the car and proceeded to pat them down, and discovered the illegal gun on Ralph Tharpe.

That officer Martin faced substantial indications of possible danger to himself because the Tharpes might likely be armed can hardly be questioned. He was alone, at night, in a poorly lit area, facing three men who had evidently been drinking. He had arrested the Tharpes' companion. He had information that the Tharpe brothers were known burglars; that they were now suspects in a recent unsolved burglary; that they were that very moment present as passengers with a man sought on a felony committed just hours earlier.

At the suppression hearing, officer Martin testified to his knowledge of these facts. His subjective feelings may have been equivocally expressed, but his testimony clearly shows that he felt a risk of danger, and had a subjective awareness of facts justifying such an apprehension. This satisfies the principle posited by *Terry* as authorizing "a reasonable search for weapons for the protection of the police officer where he had reason to believe that he is

dealing with an armed and dangerous individual." 392 U.S. at 27, 88 S.Ct. at 1883. We hold that the protective pat-down was a proper and prudent police procedure. *United ed States v. Poms,* 4 Cir. 1973, 484 F.2d 919, 921; *United States v. Green,* 1972, 151 U.S. App.D.C. 35, 465 F.2d 620, 623–24; *United States v. Berryhill,* 9 Cir. 1971, 445 F.2d 1189, 1193; *cf. United States v. Del Toro,* 2 Cir. 1972, 464 F.2d 520, 521–22.

■ We know of no legal requirement that a policeman must feel "scared" by the threat of danger. Evidence that the officer was aware of sufficient specific facts as would suggest he was in danger satisfies the constitutional requirement. *Terry* cannot be read to condemn a pat-down search because it was made by an inarticulate policeman whose inartful courtroom testimony is embellished with assertions of bravado, so long as it is clear that he was aware of specific facts which would warrant a reasonable person to believe he was in danger. Under the familiar standard of the reasonable prudent man, no purpose related to the protective function of the *Terry* rule would be served by insisting on the retrospective incantation "I was scared."

Some foolhardy policemen will never admit fear. Conversely, reliance on such a litany is necessarily prone to self-serving rationalization by an officer after the fact. It would be all too easy for any officer to belatedly recite that he was scared in situations where he neither had any reason to be scared, nor was indeed scared. The Supreme Court in *Terry* noted that the potential for abuse in relying upon a subjective rule cannot be squared with the protection guaranteed the individual by the fourth amendment.

We are not here concerned with a stop for a routine traffic offense where typically the court's "review of the record reveals no facts . . . from which we can reasonably infer that [the driver or passengers were] armed and dangerous," or that " '[A]ny time we [the officers] stop a car we are in danger' is adequate for the jury, trial court, or ourselves to reasonably infer that

the officers were in danger." *United States v. Humphrey,* 10 Cir. 1969, 409 F.2d 1055, 1058; *United States v. Collins,* 1971, 142 U.S.App.D.C. 100, 439 F.2d 610, 617. Here the officer's search of companions of the arrestee took place in a context that was factually dangerous, unlike the ordinary situation of the mere traffic violation in *Humphrey, supra,* where an officer's assertion of ubiquitous, omnipresent fear will not suffice as a foundation for a legal inference of risk of danger, or the vaguely suspicious "manner of driving" in *United States v. Kirsch,* 5 Cir. 1974, 493 F.2d 465, 466.

We need not go so far as the Ninth Circuit's rule of general justification conferring categorical reasonableness upon searches of all companions of the arrestee as being incident to the arrest of the other. *Berryhill, supra.* We simply hold that where there was good reason for an officer to apprehend that he was in a position of real danger from companions of an arrestee, that officer's pat-down search is compatible with *Terry.* Our narrow holding does not intimate that the *Terry* objective "standard" can be invoked to condone sham or pretextual searches. *Cf. United States v. Robinson,* 1973, 414 U.S. 218, 238, 94 S.Ct. 467, 38 L.Ed.2d 427; *United States v. Lefkowitz,* 1932, 285 U.S. 452, 464–67, 52 S.Ct. 420, 76 L.Ed. 877; *Amador-Gonzalez v. United States,* 5 Cir. 1968, 391 F.2d 308. Tharpe has not proved bad faith in this case. There was sufficient underlying evidence to support the conclusion reached by the district court that the motion to suppress should be denied.

■ We now turn to the other issues raised by Tharpe. We agree with the panel that Tharpe's contention that he was denied his sixth amendment right to a speedy trial is without merit. We have considered the contentions of Tharpe that were pretermitted by the panel, *i. e.,* that the documents certifying Tharpe's prior convictions were defectively authenticated; that the government should have produced these documents in response to a pre-trial motion by the defense for exculpatory material; that

the district court in this non-jury trial abused its discretion in allowing the government to reopen its case; that the evidence was insufficient to support Tharpe's conviction and his motion for judgment of acquittal should have been granted. We find these contentions devoid of merit.

The judgment of the district court is

AFFIRMED.

GEE, Circuit Judge, with whom GOLDBERG, GODBOLD and CLARK, Circuit Judges, join, dissenting.

This is a troublesome case. I would not strongly argue that the majority opinion is wrong, but I cannot convince myself that it is right.[1] The panel opinion states the reasons why I think Tharpe's conviction should be reversed. *United States v. Tharpe*, 526 F.2d 326 (5th Cir. 1976). These need be gone into here only insofar as they conflict with the present majority view.

It cannot be seriously maintained that either the present majority opinion or Officer Martin's procedures which it approves are not "reasonable," as that term is commonly used. Both are. The question is whether they are so in fourth amendment terms and when laid alongside the amendment's bias against warrantless bracing of people on a public street. Actions reasonable in the first sense are not always so in the second. *See Almeida-Sanchez v. United States*, 413 U.S. 266, 277, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) (Powell, J., concurring); *cf. id.* at 269–74, 93 S.Ct. 2535 (plurality opinion). It does not seem to me that these actions are constitutionally "reasonable."

More particularly, we deal here with the dimensions and configuration of a specific inroad on the fourth amendment, sanctioned and delineated by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20

L.Ed.2d 917 (1968). I think its area smaller and its sides less sloping than the majority opinion indicates. *Terry* found a warrantless pat-down reasonable

> where a police officer observes unusual conduct *which leads him reasonably to conclude* in light of his experience that criminal activity may be afoot and *that the persons with whom he is dealing may be armed and dangerous* . . . .

392 U.S. at 30, 88 S.Ct. at 1884 (emphasis added). *Sibron* echoes *Terry*:

> The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts *from which he reasonably inferred that the individual was armed and dangerous.*

392 U.S. at 64, 88 S.Ct. at 1903 (emphasis added).

Neither *Terry* nor *Sibron* requires that the policeman be "scared." Nor does the panel opinion construe either to do so; indeed it does the contrary.[2] What they do require, what I am unable to read them otherwise than as requiring, is that to make a valid, warrantless pat-down, the officer proposing to do so must first (1) have "reasonably inferred" (*Sibron*) or come "reasonably to conclude" (*Terry*), (2) on the basis of the specific and articulable facts, (3) that the person concerned is or may be "armed and dangerous." Thus, it is not enough that he merely have acted reasonably; he is about to do a thing constitutionally extraordinary—to halt and search a citizen without a warrant, without arresting him, and without probable cause to arrest him—and his basis for doing so must fall within the extraordinary exception cut out by the Court or fail.

---

**1.** So commences Judge Coleman's dissent from our panel opinion, here reversed by the court en banc. *United States v. Tharpe*, 526 F.2d 326, 329 (5th Cir. 1976).

**2.** 526 F.2d at 328 n.6.

Officer Martin's actions do not seem to me to do so. Let it be granted that his situation was dangerous, even that he reasonably could have concluded Tharpe was dangerous: the odds were three to one, it was nighttime, he had just arrested Tharpe's companion, and Tharpe had been drinking. Let it even be granted that Martin reasonably could have concluded that Tharpe was armed, though this seems much more doubtful: he was a known burglar, suspected of a recent unsolved burglary, and he was in bad company.[3] The difficulty in this case is that Officer Martin drew none of these conclusions; certainly, he gave no indication in his testimony that he had done so. Instead, when asked why he searched Tharpe, he candidly responded that he did so because " . . . I don't close people up behind me in a car without patting them down." Again, and more pointedly, he explained that his reason for searching Tharpe was *not* because he knew Tharpe was suspected by the Red Bay, Alabama, police of a recent burglary, but because he was going to take him in to the station:

Q    . . . The reason you searched these boys is because they were in the car with Raymond Hester, wasn't it?

A    No, sir, not necessarily. Because I knew that the information I had received from Red Bay Police Department, one reason, that they would bear watching.

Q    Would bear watching?

A.    Yes, sir.

Q    *But if you hadn't received that word, would you have searched them?*

A    *Yes, sir, before I loaded them into the back seat behind me and hauled them to the police station, yes, sir, I pat them down, for my own protection.*

(emphasis added).

Of course, this procedure was prudent, but it puts the cart before the horse: surely

we do not mean to declare that whenever a policeman decides to take someone to the station, for any reason or for no reason, he may search him first. For me, Officer Martin's candor has undone his search. While a reversal is a sorry reward for candor or poor articulation, I fear it is one mandated by the strict requirement of *Terry* and *Sibron* that police who take extraordinary measures must bear the burden of justifying them. I therefore respectfully dissent.

GOLDBERG, Circuit Judge (dissenting).

Although I join fully in my Brother Gee's dissent in this case, I write separately to emphasize my general agreement in other contexts with the majority's statement of the law.

I would hold that the presumption of reasonableness established by objective indicia of danger can be overcome by the officer's own admission that an "unreasonable" (in the fourth amendment sense) standard practice, rather than any specific fear, prompted the search. When objective indicia point to no danger, however, testimony by the officer that he was frightened cannot validate a search. As Judge Gee noted, the officer's fear must be based on "specific and articulable facts." As the majority put it, "[S]ubjective whims by officers [cannot] justify a protective frisk."

---

**3.** I confess to having great difficulty with the apparent lesson here that persons who have been convicted of burglary in the past must keep good company and avoid localities where an unsolved burglary has been committed on pain of being searched at will. I cannot say such a rule is utterly unreasonable, but I doubt it squares with *Terry* and *Sibron.*