6-96-028-CV Long Trusts v. Dowd 



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00095-CV
______________________________



IN RE: ROBERT O. ZIMMERMAN, M.D.





                                                                                                                                                             

Original Mandamus Proceeding





                                                                                                                                                             
                          


Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter



O P I N I O N

            Robert O. Zimmerman, M.D., has filed a petition for writ of mandamus in which he asks us
to order the trial court to vacate its February 20, 2004, ruling in which it reconsidered its previous
order and granted plaintiffs an extension of time to file an amended expert report. The issue is the
adequacy of the medical expert's report pursuant to former Article 4590i. Tex. Rev. Civ. Stat.
Ann. art. 4590i, Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985,
repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884,
and recodified at Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2004–2005).
            Zimmerman and other doctors were sued by Albion Guppy, based on his allegations that their
failures in treatment resulted in serious injury. Zimmerman and James E. Gulde, M.D., filed motions
to sever the claims against them from the lawsuit and to dismiss. The trial court granted
Zimmerman's motion to dismiss October 13, 2003. The court conducted a hearing on a motion to
reconsider January 23, 2004. The trial judge stated in open court that the expert's report was
inadequate, but withdrew the dismissal as to Zimmerman and gave Guppy a thirty-day grace period,
until February 23, 2004, to bring the expert report into compliance with the statute. 
Mandamus: Standard of Review
            Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion
or the violation of a duty imposed by law, and (2) the absence of a clear and adequate remedy at law. 
Cantu v. Longoria, 878 S.W.2d 131 (Tex. 1994); Walker v. Packer, 827 S.W.2d 833, 839–40 (Tex.
1992). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without
reference to any guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241–42 (Tex. 1985).
Relator's Arguments
            Zimmerman argues that we should order the trial court to withdraw its order allowing Guppy
an additional thirty days to amend the expert report and that the trial court clearly abused its
discretion by reconsidering its order of dismissal and by allowing the thirty-day grace period.
            In his petition for writ of mandamus, Zimmerman contends the trial court was required to
dismiss the lawsuit because Guppy did not furnish either an "expert report" (because no adequate
curriculum vitae was attached), or any report that represented a good-faith effort to comply with the
statute. He further argues that, under those circumstances, the trial court had no authority to grant
a thirty-day grace period to bring the expert report into compliance—and that, by so doing, the court
clearly abused its discretion.
            Zimmerman finally argues that he has no adequate remedy at law because a post-trial appeal
cannot remedy his loss of his due process right to pretrial dismissal with prejudice.
Is Mandamus Available to Review a Court's Decision on an Expert Report
            Relying on In re Collom & Carney Ass'n, 62 S.W.3d 924 (Tex. App.—Texarkana 2001, orig.
proceeding), a case from this Court, and on a case citing our opinion, Zimmerman takes the position
that mandamus is routinely available to review a court's determination on an expert's report in a
medical malpractice case. That is not a correct analysis of our opinion.
            The facts in Collom & Carney were unique. The trial court explicitly found that the medical
report failed to comply with the statute and that the failure was not the result of accident or mistake. 
Regardless, the trial court granted an extension of time to refile the expert medical report. Id. at 927. 
We expressly stated that the issue was whether "the trial court, having found that the expert report
filed by the plaintiff was not in compliance with the statutory requirements, and having further found
that such lack of compliance was not due to accident or mistake, had a ministerial duty to dismiss
the plaintiff's case with prejudice." Id. We concluded that it did and that its findings precluded the
court from granting a grace period or time extension—thus, in light of the mandatory language of
the controlling statute, the trial court had a ministerial duty to dismiss with prejudice. 
            As explicitly pointed out in the concurring opinion authored by Justice Ben Z. Grant, we did
not in that opinion review the merits of the court's finding on the expert's report. Id. at 930 (Grant,
J. concurring). Indeed, the merits were later addressed by this Court in a direct appeal, in Moore v.
Sutherland, 107 S.W.3d 786 (Tex. App.—Texarkana 2003, pet. denied). In that opinion, we
addressed the merits of the issues raised concerning the expert's report and found that the court erred
because the original report substantially complied with the statute and that the plaintiff was therefore
entitled to the thirty-day extension to file a complying report.
            Zimmerman also directs our attention to In re Morris, 93 S.W.3d 388, 390 (Tex.
App.—Amarillo 2002, orig. proceeding), an Amarillo opinion that cites our opinion for the
proposition that, because the statute expressed a specific purpose of addressing frivolous claims by
requiring dismissal, remedy by direct appeal was inadequate and mandamus was available. We have
previously discussed the basis on which mandamus was granted in Collom & Carney. The Amarillo
court's analysis approves a further-reaching mandamus review than was present in Collom & Carney.
            For mandamus relief to be available here, we first must conclude the trial court clearly abused
its discretion or made findings which left it with the duty to perform only a ministerial act. If neither
of those situations is present, the first requirement for mandamus relief is not shown and it is not
necessary to address the second requirement (no adequate remedy by appeal). In this case, the trial
court implicitly found that the report failed to comply with the statute since it granted the plaintiff
an extension to correct it. However, the trial court further implicitly found that the failure to comply
with the statute was not intentional or a result of conscious indifference, but was a result of accident
or mistake. This clearly distinguishes this case from Collom & Carney.


 
            The trial court is required to grant a thirty-day grace period if, after a hearing, "the court finds
that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious
indifference but was the result of an accident or mistake, . . . ." Tex. Rev. Civ. Stat. Ann. art.
4509i, 13.01(g).


 At the January 23 hearing, Ryan Chadwick, one of Guppy's attorneys, testified that,
at the time he filed the expert medical report, he believed the report met the statutory requirements. 
He thought the information in the report was sufficient to provide the curriculum vitae of Dr. Carlos
Herrera. He further stated he did not consciously disregard the requirements of the statute. 
            Zimmerman argues that Guppy is precluded from making this argument based on counsel's
analysis of the recent Texas Supreme Court opinion in Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex.
2003). 
            In Walker, the court agreed that the Section 13.01(g) extension period applies to inadequate
but timely filed reports. Id. at 61. The court reviewed the differences between failures that were
intentional or the result of conscious indifference as opposed to those that were the result of accident
or mistake. In the context of a mistake of law, i.e., an error by counsel in his or her understanding
of the law, the court recognized that counsel had filed a report that entirely omitted two requirements
of the statute. The court then held that, where counsel omitted "one or more of section 13.01(r)(6)'s
required elements, a purportedly mistaken belief that the report complied with the statute does not
negate a finding of 'intentional or conscious indifference.' Tex. Rev. Civ. Stat. Ann. art. 4590i,
§ 13.01(g). Accordingly, such a mistake is not a mistake of law that entitles a claimant to a
section 13.01(g) grace period." Id. at 65. The opinion did not address situations where the element
was provided—but arguably was inadequate. 
            In this case, counsel did not omit a required element of the statute. Arguably, the report was
inadequate—but the required elements were not omitted. In such a situation, the express language
of Walker does not apply and the trial court was not required, as a matter of law, to find that no
accident or mistake occurred. Under Walker, a different result would exist had counsel entirely
omitted a statutorily required portion of the report. 
            Under the requisite abuse of discretion analysis required under Walker, 111 S.W.3d at 62, 
we therefore conclude the trial court did not abuse its discretion by determining that Guppy should
be allowed to amend and correct the expert report.
            We deny the petition.
 

 
                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          October 14, 2004
Date Decided:             October 15, 2004




ified by an anonymous tip regarding a drug
transaction. 6 S.W.3d at 762. The "weapons" pat down, which yielded the small amount of cocaine
expected, however, was not justified. Id. at 764. The court pointed out that the detention occurred
in the middle of the day in a public parking area not designated as a high crime area. Id. There was
no information from the tipster that Guevara was to be considered armed and dangerous. Id. 
Guevara was cooperative and did nothing furtive or suspicious that might have indicated a threat to
the officer. Id. The court also pointed out that in light of the anonymous tip, the officer knew that
at best, the transaction would involve only a small amount of cocaine. Id. The officer "acquiesced"
to State questioning, explaining that he patted down Guevara for weapons and contraband, but never
specified why he believed the situation was unsafe. Id. It was obvious to the Guevara court that the
officer was searching for the cocaine mentioned in the tip; he testified that he was. Id. The court
rejected the State's argument that the violent nature of narcotics transactions made it reasonable to
suspect that the appellant might have a weapon: "These reasons are merely the 'unparticularized'
suspicions or 'hunches' which Terry held are not enough to justify a self-protective search." Id. 

 C. Review of the Validity of a Pat Down

 So, it is clear that police regulations or routines are not sufficient to justify a pat-down search. 
See O'Hara, 27 S.W.3d at 553; Sikes, 981 S.W.2d at 494. However, not every pat-down search
performed as a matter of routine will be overturned automatically. O'Hara, 27 S.W.3d at 554. Even
if an officer conducts a pat down simply as a matter of routine, the objective facts available to the
officer may still justify the pat down. Id. Whether a Fourth Amendment violation has occurred
"turns on an objective assessment of the officer's actions in light of the facts and circumstances
confronting him at the time, and not on the officer's actual state of mind at the time the challenged
action was taken." Maryland v. Macon, 472 U.S. 463, 470-71 (1985); Sheppard, 271 S.W.3d at 288;
O'Hara, 27 S.W.3d at 551; Davis, 947 S.W.2d at 242-43. In other words, an officer's testimony that
he or she was not afraid of the suspect does not automatically invalidate a pat-down search for
weapons. (6) O'Hara, 27 S.W.3d at 551.

 Instead, we must remain focused on the proper question by asking whether, under an
objective analysis, a reasonably cautious person would be justified in making a precautionary search
for weapons. See Terry, 392 U.S. at 27; O'Hara, 27 S.W.3d at 551. The officer need not be
absolutely certain that the individual is armed. Reasonable inferences that the officer is entitled to
draw by analyzing the facts in light of his or her experience may be all that is necessary to
characterize the officer's actions as reasonable. See Terry, 392 U.S. at 27.

 A defendant alleging a Fourth Amendment violation bears the burden of producing some
evidence to rebut the presumption of proper police conduct and "meets his initial burden of proof
by establishing that a search or seizure occurred without a warrant." Russell v. State, 717 S.W.2d
7, 9 (Tex. Crim. App. 1986). The burden then shifts to the State to prove that the search or seizure
was nonetheless reasonable under the totality of the circumstances. See id. at 9-10. In determining
whether the State carried its burden, we must give great deference to the trial court's determination
of the historical facts. See Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). We are
not at liberty to disturb any finding supported by the record. Arnold v. State, 873 S.W.2d 27, 34
(Tex. Crim. App. 1993).

 D. Analysis and Conclusion

 Here, Griswold legally detained Chism, who met the description of a man reported as having
engaged in suspicious behavior at the convenience store. However, the record indicates that Chism
posed no danger to Griswold. Chism was alone, and there is no indication that the location of the
detention was a high-crime area. Chism was suspected of panhandling, not generally considered a
violent offense that could lend itself to justifying concern for officer safety. Griswold confirmed that
Chism was nothing but compliant during the encounter. Further, the encounter took place mid-morning, in broad daylight. Griswold testified he saw no bulges that would suggest a concealed
weapon and that Chism made no furtive movement that would suggest Chism was about to flee or
that Chism posed a threat to Griswold. (7)
 Griswold testified plainly he had no concern that Chism was
carrying a weapon:

 [DEFENSE COUNSEL]: Did you see anything on his person that appeared
to you that he might have a weapon?

 

 [GRISWOLD]: No, sir. 

 

 . . . .

 

 [DEFENSE COUNSEL]: Did he make any threats or gestures to you that
you took as exhibiting some type of threat towards you?

 

 [GRISWOLD]: No, sir.

 

 . . . .

 

 [DEFENSE COUNSEL]: And he did nothing to threaten you in any
manner; is that correct?

 

 [GRISWOLD]: That's correct.

Instead, he explained, he performs a pat-down search as a matter of routine: "Every single time I
make contact with a suspect[,] I check for weapons for officer safety." "I'm making a contact with
a person that I don't know who people are accusing of an offense." 

 Recognizing that Griswold's testimony regarding his "normal practice" and his lack of
subjective fear are not conclusive on the issue, we look to the only evidence in the record touching
on a concern for officer safety. This testimony came in Griswold's response to the State's leading
questions on the matter:

 [STATE]: Okay. [Defense counsel] makes a big deal about you Terry
stopping him for no reason, you Terry stop everybody in the world. People that are
walking in Gilmer, transient population, do they usually have weapons on them?

 

 [GRISWOLD]: Yes.

 

 [STATE]: Okay. Such as?

 

 [GRISWOLD]: I have found knives, screwdrivers, handguns.

 

 [STATE]: A lot of transient population also abuse narcotics?

 

 [GRISWOLD]: Yes, sir.

 

 [STATE]: Would they also have needles, such things on them?

 

 [GRISWOLD]: That is correct.

 

 [STATE]: So were you worried that he might possibly stab you with one
of these items?

 

 [GRISWOLD]: Yes.

 

 [STATE]: Is it normal for you to have these apprehensions of someone
walking, panhandling that might hurt you?


 [GRISWOLD]: That's correct.

Much like the officer in Guevara, Griswold "acquiesced" to the State's prompting/questioning about
safety concerns. Moreover, Griswold based this concern for officer safety solely on Chism's status
as a transient, a status that although suggested, is not conclusively established by the record. 
Because Chism appeared to be homeless, Griswold assumed that he would be an armed and
dangerous narcotics abuser. And that was his justification for the newly-revealed concern for his
safety.

 Taking that evidence in the light most favorable to the trial court's ruling, even though it is
directly contrary to his earlier testimony, we conclude that such evidence still falls short of the
standards set forth in Terry. Terry requires that "due weight must be given, not to [the officer's]
inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences which
[the officer] is entitled to draw from the facts in light of his experience." 392 U.S. at 27. The officer
''must be able to point to particular facts from which he reasonably inferred that the individual was
armed and dangerous." Sibron v. New York, 392 U.S. 40, 64 (1968) (emphasis added).

 Here, we have only generalizations concerning weapons and narcotics abuse within the
transient population of Gilmer, Texas. Assuming the veracity of Griswold's professed concern, we
find that it runs afoul of Terry's prohibition of pat-down searches based on "unparticularized
suspicion[s] or hunch[es]." These broad and bold generalizations based on an individual's transient
status are insufficient to authorize a reasonable belief or inference that the person is armed and
dangerous. To conclude otherwise would subject very nearly any lawfully detained homeless or
transient person to a pat-down search at any moment. This is unreasonable. 

 Similar to the encounter in Sikes, we see a daylight detention of a compliant individual
suspected of a nonviolent offense, a pat down performed as a matter of routine, and a record devoid
of any specific facts to suggest the individual was a danger to the officer or to support the officer's
professed concern for safety. Like the officer in Guevara, Griswold did acquiesce to the State's 
leading questioning and testified that he was concerned for his safety. But that concern, based solely
on generalizations of a population, is insufficient to serve as justification for the pat-down search. 
In much the same way as did the Houston First Court in Guevara, we reject these "'unparticularized'
suspicions or 'hunches' which Terry held are not enough to justify a self-protective search." 6
S.W.3d at 764; see Ybarra, 444 U.S. at 93 (fact that defendant was wearing 3/4-length lumber jacket
which could be expected on almost any tavern patron in Illinois in early March does not articulate
any specific fact that would have justified a police officer at scene reasonably concluding defendant 
was armed and dangerous).

 Viewing the evidence in a light most favorable to the trial court's ruling, we find that the only
evidence that Griswold was concerned that Chism was armed and dangerous is Griswold's extracted,
internally inconsistent testimony concerning his generalized ideas of the transient population. This
evidence is contradictory to Griswold's original account that he did not have any concern about a
threat or a weapon when approaching Chism who was, by Griswold's own account, compliant during
the encounter. Even in a most favorable light, Griswold's later testimony recalling a concern for
safety is based on broad generalizations of the homeless population and, as such, falls short of a
reasonable belief based on specific, articulable facts that the person is armed and dangerous. See
Terry, 392 U.S. at 27; Sheppard, 271 S.W.3d at 287. Based on the totality of the circumstances and
the facts known to Griswold at the moment of the pat down, we find the facts do not support a 
reasonably prudent concern for officer safety and that the resultant weapons pat down was
unjustified; the motion to suppress the controlled substance found in the search should have been
granted. 

 We reverse the trial court's judgment and remand the cause to the trial court for further
proceedings.


 Jack Carter

 Justice


Date Submitted: July 24, 2009 

Date Decided: September 16, 2009


Publish 
1. "[P]anhandle" - "to accost passers-by on the street and and beg from them. . . . . so called
from the resemblance of the extended arm to a panhandle." Random House Webster's
Unabridged Dictionary 1402 (2nd ed. 2001)
.
2. Another officer would later go to the store to get a further description and information. But
at the time Griswold was dispatched, the extent of the information was as described. 
3. Not every encounter between police and citizens implicates the Fourth Amendment. Hunter
v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). A mere request for an individual to stop or
submit to a search does not necessarily constitute a ''stop," and such a request need not be justified
by reasonable suspicion. See id. Only if the officer conveyed a message that compliance was
required has a consensual encounter become a detention. In determining whether the officer
conveyed  such  a  message  to  the  suspect,  we  consider  the  following  nonexhaustive  factors: 
(1) whether the officer was in uniform; (2) whether the officer exhibited a weapon; (3) the number
of officers present; (4) whether the officer suggested that he or she would get a warrant if the
defendant did not comply; (5) whether the officer told the defendant he or she believed the defendant
was carrying drugs; and (6) whether the officer told the defendant that compliance was or was not
required. Id. An investigative detention occurs when an individual is encountered by a police
officer, yields to the officer's display of authority, and is temporarily detained for purposes of an
investigation. Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). A person "yields to
an officer's display of authority" when a reasonable person would not feel free to continue walking
or otherwise terminate the encounter. Florida v. Bostick, 501 U.S. 429, 436 (1991); State v.
Velasquez, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999).
4. As we will explore later, we pause here to note that a weapons pat down is not intended to
allow an officer to search for evidence of a crime. See Wood v. State, 515 S.W.2d 300, 306 (Tex.
Crim. App. 1974).
5. It was later determined that neither brother had committed the offense of burglary of a
vehicle; Mark Sikes, appellant's brother and the driver, was merely putting a note in his girlfriend's
vehicle. See Sikes, 981 S.W.2d at 491.
6. As the Fifth Circuit Court of Appeals has observed, there is "no legal requirement that a
policeman must feel 'scared' by the threat of danger" because "some foolhardy policemen will never
admit fear." O'Hara, 27 S.W.3d at 551 (quoting United States v. Tharpe, 536 F.2d 1098, 1101 (5th
Cir. 1976), overruled in part on other grounds by United States v. Causey, 834 F.2d 1179 (5th Cir.
1987)).
7. There is no evidence that Chism exhibited any of the nonexclusive list of factors that the
Texas Court of Criminal Appeals has listed as authorizing a protective search: 


 1) no flight or no furtive gestures or sudden movements towards a pocket or other
place where a weapon might be concealed; 2) no threats made and no attempt made
to resist detention; 3) appellant is not shown to be committing or about to commit
any criminal offense, and; 4) appellant does not seem to be under the influence of
alcoholic beverages or drugs.


Worthey, 805 S.W.2d at 438-39 (citing Lippert v. State, 664 S.W.2d 712, 721 (Tex. Crim. App.
1984)).