UNITED STATES of America,
Plaintiff–Appellee,

v.

Douglas Jerome TOOKES,
Defendant–Appellant.

No. 80–7320.

United States Court of Appeals,
Fifth Circuit.
Unit B

Dec. 29, 1980.

J. Melvin England, Atlanta, Ga., for defendant–appellant.

Craig A. Gillen, Asst. U. S. Atty., Atlanta, Ga., for plaintiff–appellee.

Before SIMPSON, RONEY and THOMAS A. CLARK, Circuit Judges.

RONEY, Circuit Judge:

Defendant appeals from a conviction for possessing a firearm by a convicted felon. 18 U.S.C.A.App. § 1202. We hold an illegal arrest tainted the discovery of the firearm, evidence of which should have been suppressed. A reversal of the conviction on that ground makes it unnecessary to reach any other ground of alleged error.

On the day in question, defendant and his brother, who together operated a service station, made a service call in a pickup truck owned by the brothers' corporation. Once the stalled vehicle was started, around 1:00 p. m., defendant's brother drove it back to the service station while defendant drove nearby to 261 Elm Street in Atlanta to visit his girlfriend, who lived in a duplex at that address.

Officer Sproat of the Atlanta Police Department and Agent Crane of the Drug Enforcement Administration were parked about 30 yards down the street in an unmarked government vehicle conducting routine plain clothes surveillance for narcotics trafficking. It appears that Officer Sproat knew defendant from previous investigations and knew he was a convicted felon. When the defendant stepped out of his car, Sproat drove his car up beside where defendant was standing, stopped the car, and as he began to get out, said, "Police, Doug."

At this point, defendant saw the two men in T–shirts and other "casual" attire getting out of the car, gave a wild frightened look and started to run behind the duplex toward a recreational area. Sproat chased him with pistol in hand. Defendant went only 20–25 yards when he slipped and fell, and Sproat was able to apprehend him. While defendant was still on the ground Sproat quickly frisked him. In the meantime, Agent Crane had driven the car to the rear of the duplex. The two officers together searched defendant thoroughly, emptying his pockets, examining his wallet and keys, and even removing his shoes and socks. Defendant was told to get in the back seat of the vehicle, which he did. The agents testified that at no time did they tell defendant he was under arrest. Agent Crane then drove the vehicle back to Elm Street near the pickup truck. The record is unclear as to the route taken by Agent Crane. Agent Crane testified that he backed out the same way he came in, which is the same way defendant ran. Defendant testified that Agent Crane drove out the back and around the block, taking 6–9 minutes to arrive at the truck. Officer Sproat testified, under specific questioning, that he could not remember which way Crane went, but that Crane and defendant arrived back at the truck "in around a couple of minutes."

After defendant was in the back seat of the car, Sproat walked back to the truck. Although he admits he did not see defendant drop anything during his brief dash, Sproat testified he was hoping to find something defendant might have thrown down, when he saw the pistol. As Sproat described it to the magistrate:

I was searching the grass area, and the whole area that he possibly could have thrown something, all the way back up to the truck, where I initially saw him exit the truck and was standing. As I went back up to the truck to establish whether or not he had thrown anything around the truck, I looked into the truck, and in plain view on the seat next to the driver was the nine–millimeter Browning semi-automatic pistol.

Defendant was then placed under arrest for possession of a firearm by a felon.

Defendant's version of how the pistol was found on the front seat—that his brother had left it in the glove compartment and that Sproat had removed it from there and placed it in the seat while Crane was driving defendant around the block and then feigned finding it in plain view—although supported by his girlfriend's testimony, was apparently not credited by the trial jury.

Prior to trial, defendant moved to suppress the use of the firearm as evidence, on the grounds that his arrest, the search of his person, and the search of the pickup truck were unconstitutional. The magistrate's recommendation, adopted by the district court, found that the initial encounter between defendant and the officers near the pickup truck was merely a contact between a police officer and a citizen and was not unlawful. The apprehension of defendant after he fell was found to be merely an "investigatory detention" while the officers attempted to ascertain the reason for defendant's flight, and was legal under *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) and *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a conclusion which may be questionable in light of our holding in *United States v. Cole*, 628 F.2d 897, 899 (5th Cir. 1980). Because the evidence the defendant sought to suppress was not discovered during the search of his person, however, the court found it unnecessary to consider the legality of that search. The court also found there was nothing amiss in the officer's retracing defendant's path, and that the path led the officer back to the pickup truck where he inadvertently discovered the firearm in plain view from a position in which he was lawfully entitled to be. Upon discovering the firearm, the officer, knowing the defendant was a convicted felon, had probable cause to arrest the defendant for possession of a firearm. The court found that the arrest and search of the vehicle were lawful and the motion to suppress was denied.

■ The district court erred in failing to find that the defendant was arrested at the time he was placed in the government vehicle. As was made clear in the Supreme Court's opinion of *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) and in our recent case of *United States v. Hill*, 626 F.2d 429 (5th Cir. 1980), *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny created only a very narrow exception to the broad general rule that the seizure of a person "must be supported by the 'long prevailing standards' of probable cause." *Dunaway v. New York*, 442 U.S. at 212, 99 S.Ct. at 2256, quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). The seizure here went far beyond the limited on–the–street frisk for weapons upheld in *Terry v. Ohio, Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) and *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Likewise, the seizure here cannot be justified as an "investigative detention." The Court has spoken clearly to this point in *Dunaway*, 442 U.S. at 214–16, 99 S.Ct. at 2257, and in *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), where it was stated:

> [T]o argue that the Fourth Amendment does not apply to the investigative stage is fundamentally to misconceive the purposes of the Fourth Amendment. . . . Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed "arrests" or "investigatory detentions."

394 U.S. at 726–27, 89 S.Ct. at 1397. Furthermore, although the initial detention here was not accompanied by formal words of arrest or stationhouse booking, we have held that such indicia are not required to constitute an arrest requiring probable cause. *United States v. Brunson*, 549 F.2d 348, 357 (5th Cir. 1977).

The facts in the record are sufficiently clear to show that defendant was arrested at the time he was placed in the police car. He had been detained on the ground by an officer with pistol in hand. Not only had he been frisked, but he had also been searched from head to toe, even to the removal of his shoes and socks. He had been ordered into the back seat of a government vehicle and was thereafter driven some distance, perhaps even around the block. He testified that he had no doubt that he was not free to go, a reasonable perception in view of the facts mentioned here.

■ Having determined that defendant was under arrest at the time he was placed in the back seat of the police vehicle, we must next ascertain whether the officers had probable cause to make the arrest. Probable cause exists when the facts and circumstances within the arresting officers' personal knowledge, or of which he has reasonably trustworthy information, are sufficient to warrant a person of reasonable prudence to believe an offense has been or is being committed. *United States v. Forrest*, 620 F.2d 446 (5th Cir. 1980); *United States v. Ashcroft*, 607 F.2d 1167 (5th Cir. 1979). The district court found that Officer Sproat had reasonable suspicion at the time he apprehended defendant and that he had probable cause to arrest defendant at the time he discovered the gun on the seat of the pickup. The facts known to the officers at the time defendant was placed in the police vehicle are outlined in the record.

■ The record indicates that Sproat knew the defendant from previous drug investigations and knew the defendant had been convicted of a felony. The felony conviction, however, was not drug related but for vehicle theft, a Dyer Act violation. Sproat knew a number of drug arrests had been made in recent years at 261 Elm Street, and that defendant was frequently at that address. Sproat also knew the defendant had fled from him. After defendant had been apprehended and searched, the officers knew defendant was not carrying any drugs or other contraband. They had not seen defendant leave anything in the pickup truck or discharge anything as he fled. The incident occurred in the middle of the day and in a residential area.

On these facts, there was not probable cause to arrest defendant at the rear of the duplex. While defendant's flight may have justified the officers' decision to take the action of chasing him and asking further questions, *see United States v. Vasquez*, 534 F.2d 1142, 1145 (5th Cir. 1976); *United States v. Pope*, 561 F.2d 663, 668 n. 5 (6th Cir. 1977), it, together with the officers' knowledge of defendant's character and the character of the neighborhood, did not rise to the level of probable cause, which is a constitutional prerequisite to a valid arrest. The arrest was therefore invalid.

■ The Government argues that even if there was an invalid arrest at the rear of the duplex, it did not taint the discovery of the gun on the seat of the pickup. The critical inquiry is

> whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). To aid this inquiry, this Court has established guidelines to determine whether the connection between the illegal arrest and the discovery of the evidence has become so attenuated as to dissipate the taint and ensure the admissibility of the evidence. Among these factors are: (1) the proximity of the illegal arrest to the procurement of the challenged evidence; (2) the presence of intervening circumstances between the arrest and the discovery of the evidence; and (3) the circumstances under which the arrest was made. *United States v. Wilson*, 569 F.2d 392, 396 (5th Cir. 1978); *Phelper v. Decker*, 401 F.2d 232, 237 (5th Cir. 1968).

■ Judged by this standard, the connection between the arrest and the discovery of the gun was not so attenuated as to dissipate the taint of the illegal arrest. The discovery of the gun occurred only a few minutes after the illegal arrest and only 20–25 yards away. The only intervening circumstances were that defendant was placed in the back seat of the car and driven (perhaps around the block) by the other agent while Officer Sproat walked directly back to the pickup truck looking for evidence. In considering the totality of the circumstances under which the arrest was made, "the arrest . . . amounted to a gross violation of legal processes," and was not merely "a matter of failure to comply with technical requirements." *Phelper v. Decker*, 401 F.2d at 237–38. Thus the taint cannot easily be removed. While the gun was in plain view and conceivably could have been discovered even without the arrest, the temporal and spatial proximity of the arrest and the finding of the gun make it clear that the two are interrelated. The discovery of the gun is not sufficiently distinguishable from the illegal arrest to be purged of the primary taint. Evidence of the gun should have been suppressed and defendant's conviction based on that evidence cannot stand.

Having found that the conviction is invalid on this ground, it is unnecessary to consider defendant's contention that discovery of his counsel's failure to correct a false statement in the indictment was newly discovered evidence, on the basis of which his motion for new trial should have been granted.

REVERSED.