Appellants, Rodney and Brenda Spann, husband and wife, were arrested on October 18, 1983, for possession of marijuana, in violation of § 20-2-70, Code of Alabama 1975. The February 1984 Term of the Houston County Grand Jury returned indictments charging the appellants with possession of marijuana. A trial without a jury was held, in which the court found Rodney Spann guilty as charged and sentenced him to 10 years in the penitentiary, upon application of the Habitual Felony Offender Act, and fined him $1,000. Brenda Spann was found guilty as charged and sentenced to two years in the penitentiary and fined $1,000. Brenda Spann was subsequently granted probation. A third individual, Woodrow Yon, was arrested with appellants. He was subsequently released by the trial court after a determination that there was insufficient evidence presented on which to find him guilty.
On this appeal the appellants' sole contention is that the warrantless search of their vehicle, which led to the seizure of marijuana, was invalid. The State contends that the seizure was properly made pursuant to the "plain view" exception to the warrant requirement.
Deputy Sheriff Jerry Hunt testified that at 3:02 a.m. on October 18, 1983, he and Deputy Jimmy Maddox received a radio dispatch stating that "there was a red Camaro in the Red Barn parking lot occupied by Rodney Spann, Woodrow Yon," and Brenda Spann, and that they were selling marijuana. Hunt and Maddox, who were in separate vehicles, proceeded to the Red Barn bar searching for appellants.
Upon arriving at the Red Barn, appellants' car was spotted and the officers blocked the Camaro automobile from the front and rear. Maddox radioed Hunt and informed him that the vehicle had an "improper tag." Hunt told Rodney Spann that he was being stopped due to having an improper tag and requested identification. Rodney Spann produced a proper bill of sale and tag receipt.
Officer Hunt then testified that he observed in "plain view" a "small cassette tape case partially closed with a plastic bag with green vegetable material out of it," located on the floorboard of the passenger side of the vehicle, under Brenda Spann's legs. The occupants of the vehicle were asked to get out of the car. Officer Hunt took the cassette case from the car, opened it, discovered marijuana, and placed appellants under arrest.
At trial no evidence was introduced pertaining to the information dispatched to Officers Hunt and Maddox. It was also made quite clear that the officers were planning to stop and search appellants' vehicle based on the radio dispatch regardless of the alleged improper tag. At trial Hunt testified as follows:
 "Q. Why did you ask them all to get out if it was a tag violation that you stopped them for?
 "A. Because we had information that there was an illegal substance in the vehicle.
"Q. That's why you stopped them, isn't it?
"A. Yes, sir. *Page 718 
 "Q. You didn't stop them because of the tag violation, did you?
"A. No, sir.
 "Q. When you asked to see the tag, he provided proper identification, is that right?
"A. That's correct.
 "Q. And at that point, you looked in the car to see what you could see, didn't you?
"A. That's correct."
Officer Maddox testified in a similar manner:
 "Q. So you intended to stop that car irrespective of whether they had the tag or not, didn't you?
"A. Yes, sir, I would have."
Appellants contend that the State failed to establish probable cause sufficient to justify a warrantless search of the vehicle. The State argues in brief that the officers were in a place where they had a right to be, due to the presence of an allegedly "improper," i.e., temporary, tag, which the officers had a right to investigate. We agree that under normal circumstances the presence of an improper tag would justify investigation by police authorities; however, in the context of this case, Officers Hunt and Maddox individually testified that they intended to stop the appellants' vehicle regardless of the type of tag appearing on the vehicle. The temporary tag was merely a pretext used to justify the officers' right to approach the vehicle. We will not indulge in a legal fiction to justify the stopping of the appellants' vehicle, where it is clear that the officers were determined to stop the vehicle based solely on the police dispatch and not the presence of an allegedly improper tag.
Warrantless searches "`are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions'. . . . `[T]he burden is on those seeking the exception to show the need for it.'" Coolidge v. New Hampshire, 403 U.S. 443, 445,91 S.Ct. 2022, 2027, 29 L.Ed.2d 564 (1971); Kinard v. State,335 So.2d 924, 926 (Ala. 1976). Those exceptions have been clearly expressed in Alabama jurisprudence as plain view; consent; incident to lawful arrest; hot pursuit or emergency situations; where exigent circumstances exist coincidental with probable cause; stop and frisk situations; and inventory search situations. See Daniels v. State, 290 Ala. 316, 276 So.2d 441
(1973); Wilkinson v. State, 374 So.2d 400 (Ala. 1979); Vogel v.State, 426 So.2d 863 (Ala.Crim.App. 1980). If the state is to justify the warrantless search of appellants' vehicle, it must place the search within one of the exceptions listed above.
The State seeks to justify the warrantless search on the "plain view" doctrine. The "plain view" exception to the warrant requirement permits a warrantless seizure of evidence only when certain well established prerequisites are shown to exist. Alabama law allows a warrantless seizure if "the seizing officer (1) has prior justification for the intrusion, (2) comes upon the evidence inadvertently, and (3) immediately recognizes the object discovered as evidence of wrongdoing."Myers v. State, 431 So.2d 1342, 1344 (Ala.Crim.App. 1982). In this case reliance upon the "plain view" exception is inappropriate because there is no prior justification for the initial intrusion as contemplated by Coolidge, supra. SeeKinard, supra. Furthermore, there appears to be nothing inadvertent about finding the marijuana. The officers were clearly looking for marijuana or evidence of marijuana, based on the police radio dispatch. As stated in Coolidge,403 U.S. at 470, 91 S.Ct. at 2040, "when the discovery is anticipated, when the police know in advance the location of the evidence and intend to seize it, the situation is altogether different."
If the warrantless search of the appellants' vehicle is to be justified under the facts of this case, it must fall under the "exigent circumstances coincidental with probable cause" exception of Carroll v. United States, 267 U.S. 132,45 S.Ct. 280, 69 L.Ed. 543 (1929). In Carroll the Court held that warrantless searches of vehicles *Page 719 
would be permitted if the police initially had probable cause to believe that the vehicle contained contraband or evidence of a crime and if exigent circumstances existed. At trial, the State's showing of probable cause was based on the police radio dispatch. Even though appellants properly and timely objected to the sufficiency of this evidence to establish probable cause, the State failed to proceed further and show the underlying facts or basis of the radio dispatch.
In Owens v. State, 51 Ala. App. 50, 61, 282 So.2d 402, 413
(1973), it is said:
 "The measure of the legality of warrantless searches and seizures is whether the seizing officers have probable cause for believing that the automobile they stop contains stolen property, illegal contraband or other fruits of a crime. Following Whiteley [v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)] the officers at Town Creek could rely on the radio broadcast but the subsequent determination by any court as to probable cause must necessarily turn on all the circumstances giving rise to the police dispatch."
See also Rudolph v. State, 371 So.2d 962 (Ala.Crim.App.), cert. denied, 371 So.2d 965 (Ala. 1979). In his dissent to this court's opinion in Paschal v. State, 365 So.2d 672, 679
(Ala.Crim.App.), reversed, 365 So.2d 681 (Ala. 1978), Judge Bookout argued:
 "Probable cause does not exist merely because the officer received his information over a radio rather than from the lips of someone. Police radio dispatches may supply probable cause when, on objection, evidence establishes the basis for the report's believability."
Agreeing with Judge Bookout, the Alabama Supreme Court reversed the judgment of this court, and held that the evidence failed to establish the "underlying circumstances which gave rise to the dispatch," and therefore that probable cause was not shown to exist. Id. at 682.
In the case sub judice there was absolutely no showing of the underlying circumstances which gave rise to the police radio dispatch. Having failed to sufficiently establish probable cause the search of appellants' car cannot fall within theCarroll exception and the evidence seized pursuant to this warrantless search should have been suppressed.
For the foregoing reasons, the judgment is due to be, and is hereby, reversed, and the cause remanded.
REVERSED AND REMANDED.
All the Judges concur.