Appellant, Francis Caffie, was indicted in a two-count indictment at the October 1983 term of the Mobile County grand jury for possession of marijuana and hydromorphone hydrochloride, both being controlled substances. He was convicted on both counts after a jury trial and sentenced, as a repeat offender pursuant to § 20-2-76, Code of Alabama 1975, to fifteen years in the penitentiary. (Case No. CC83-3328, 1 Div. 934). *Page 824 
Thereafter, on September 26, 1984, after a hearing, orders granting probation to appellant in four prior unrelated cases were revoked, and in the revocation proceedings, it was stipulated by the parties that the evidence presented in appellant's trial for possession of marijuana and hydromorphone hydrochloride (CC83-3328, 1 Div. 934) would be considered as the evidence in the probation revocation hearings. The four prior cases referred to are No. DC81-20458 (possession of marijuana for personal use); No. DC81-20459 (sale of marijuana); No. DC81-20460 (sale of marijuana); and No. DC81-20461 (receiving stolen property in the second degree). Appellant pleaded guilty in each of the four cases on September 4, 1981, and was sentenced to three years' imprisonment in the penitentiary in each case. The sentences were ordered to run concurrently, but suspended for three years, and appellant was placed on probation.
Appellant appeals his conviction for possession of marijuana and hydromorphone hydrochloride, 1 Div. 934, and also appeals the revocation of his probation in the four previous cases. The appeals from the revocation of probation are consolidated herein for purposes of this opinion and are designated 1 Div. 915. On motion of appellant, 1 Div. 915 and 1 Div. 934 are also consolidated for purposes of this opinion. We will address appellant's appeals in all five cases.
We will first consider the appeal in case No. CC83-3328, 1 Div. 934. At trial, the State introduced marijuana and hydromorphone hydrochloride which had been found in a white 1978 Chrysler automobile parked near the scene of appellant's arrest. Appellant contends that his arrest, the search of his person, and the search of the automobile were unconstitutional. The State argues that appellant was properly stopped and detained on the authority of Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and § 15-5-30, Code of Alabama 1975.[1]
At the suppression hearing, Officer Raymond Grissett of the Mobile Police Department testified that on December 14, 1982, at approximately 4:59 p.m., he received a radio dispatch advising him of "suspicious circumstances" and "possible drug dealing" at the corner of Alex Herman Drive and Bishop Avenue in Mobile (hereinafter referred to as "the corner"). Grissett was advised that the call originated from "community watch," and that the informant was a person known to police authorities. However, no officer could testify that he knew for certain who made the complaint, or that the complainant was, in fact, known to police authorities. The dispatcher was not called to testify at the suppression hearing or at trial. Grissett was further advised that a black male, wearing blue jean coveralls, a blue sweatshirt, and a blue cowboy hat was selling drugs at that location. A white 1978 Chrysler automobile was also described in the dispatch. When Grissett arrived at the scene, he saw a person near the corner who matched the given description. Grissett observed this person, later identified as appellant, walk toward a white 1978 Chrysler automobile and, then, past it as appellant proceeded to the corner. Grissett was alone in his marked patrol unit and decided to wait for backup, which was reportedly in the area. Grissett proceeded down the block and saw appellant at the corner, but as he proceeded to turn at the end of the block, he lost sight of appellant. As Grissett proceeded back to the corner, he met Sergeant Billy Luther, and together, *Page 825 
but from opposite directions, Grissett and Luther approached the corner, where appellant and two other black males were standing. According to Grissett, Luther placed appellant against a wall and patted him for weapons. Appellant produced identification, and the officers evidently went through his pockets. A "large amount of cash" was taken from appellant's person. Appellant was then placed in a patrol car and was "not free to leave" at that point.
The radio dispatcher then advised that "community watch" had called back and stated that the officers had the "right subject and that white '78 Chrysler was parked in a parking lot adjacent to where we were." According to Grissett "several dozen" cars were parked in this parking lot. Grissett proceeded to the white 1978 Chrysler automobile and observed a black "industrial-type lunch box" in the back seat of the vehicle. The box was open, and he observed numerous "brown envelope packages and match boxes and a brown paper bag inside the lunch box." Grissett stated that these envelopes were of a type frequently used to package marijuana or drugs. He also observed a jacket and "a clear plastic bag . . . with green plant material in it" laying on the back seat. The plastic bag appeared to contain marijuana. Grissett checked the vehicle's doors and found them locked. Grissett then went to appellant and requested the keys to the vehicle. From the protective search, Grissett knew appellant had keys in his possession. After appellant responded that the car had been loaned to him, he produced the keys from his pocket. With one of these keys, Grissett unlocked the vehicle; inventoried its contents; and called the narcotics division.
After appellant denied that the jacket was his, he was required to put it on. Grissett stated that the jacket fit appellant "perfectly." Appellant was then informed of his arrest and advised of his Miranda rights.
On cross-examination, Grissett acknowledged that "we had nothing to charge him with" and there was nothing to connect him with the vehicle until after the vehicle search.
After the prosecution presented the evidence delineated above, the court noted that appellant was "certainly not free to leave prior to" his formal arrest and that if the prosecution could not better connect appellant to the vehicle, then it was inclined to suppress the evidence.
The prosecution then conferred with its witnesses outside the court room, and then called Luther, who testified that as he approached the scene, he observed appellant approach the vehicle, open the door, place some items in the vehicle, close the door, and walk back to the corner. The court then granted in part, and denied in part, appellant's motion to suppress. The court granted appellant's motion to suppress the statements made by appellant, the second radio dispatch, the testimony concerning the jacket and its fitting appellant, and the money taken from appellant. The court denied appellant's motion to suppress the taking of the car keys from appellant and the contraband obtained from the vehicle.
 I Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968), and its progeny created a narrowly drawn exception to the broad general rule that the seizure of a person "must be supported by the 'long prevailing standards' of probable cause." Dunaway v. New York, 442 U.S. 200, 212, 99 S.Ct. 2248,2256, 60 L.Ed.2d 824 (1979). In White v. State, 49 Ala. App. 5,12, 267 So.2d 802, 809 (1972), the court, quoting People v.Navran, 174 Colo. 222, 228-29, 483 P.2d 228, 232 (1971), stated:
 "[W]e conclude that the authority to make a search without probable cause is limited in the following manner: There must be (a) some reason for the officer to confront the citizen in the first place, (b) something in the circumstances, including the citizen's reaction to the confrontation, must give the officer reason to suspect that the citizen may be armed and, thus, dangerous to the officer or others, and (c) the search must be limited to a frisk directed at discovery and appropriation *Page 826 
of weapons and not at evidence in general."
See also Dunaway v. State, 50 Ala. App. 200, 278 So.2d 200, cert. denied, 291 Ala. 93, 278 So.2d 205 (1973). We have reviewed Terry and its progeny, and conclude that White is an accurate evaluation of the Terry analysis.
In applying the first prong of the Terry analysis, we note that the Terry Court stated:
 "A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."
392 U.S. at 22, 88 S.Ct. at 1880. Thus, it has been often stated that:
 "[T]he quantum of cause necessary to justify an investigatory stop is a 'reasonable' or 'founded' suspicion that a person has committed or is about to commit a criminal act . . . . The founded suspicion must arise from specific facts and not inchoate hunches, but the officer is entitled to draw inferences from those facts in light of his experience."
United States v. Post, 607 F.2d 847, 850 (9th Cir. 1979). See also 1 W. LaFave and J. Israel, Criminal Procedure § 3.8(d) (1984). In United States v. Cortez, 449 U.S. 411, 417,101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), the Court further clarified this reasonable suspicion prong of the Terry
analysis, stating:
 "Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like 'articulable reasons' and 'founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances — the whole picture — must be taken into account. Based on the whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."
We believe that the radio dispatch, coupled with the officers' observation of the scene and the fact that appellant, dressed as reported, was at the scene, supported a reasonable suspicion, though just barely, that criminal activity may have been afoot. Although the radio dispatch would not have supported a finding of probable cause to arrest, it was properly relied on, with other objective facts, for the police authorities to have reasonably concluded that criminal activity may have been present. See Bates v. State, 48 Ala. App. 489,266 So.2d 155, cert. denied, 289 Ala. 740, 266 So.2d 160 (1972), cert. denied, 401 U.S. 942, 93 S.Ct. 1359, 35 L.Ed.2d 608
(1973), and our discussion of this issue, infra, at part III.
A finding that the police had sufficient justification to "stop" appellant under Terry does not, however, complete our analysis of this issue. As was stated in Florida v. Royer,460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983):
 "This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purposes of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officers suspicion in a short period of time. . . . It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure."
While it is clear that Terry and § 15-5-30 authorize police authorities to conduct a limited stop and frisk for weapons under appropriate circumstances, on less than probable cause, the scope of a stop is narrowly drawn and limited to situations where the police briefly detain an individual in order to determine who the individual is and to allow the individual to explain any suspicious actions or activities in which he is engaged.
 "The person approached, however, need not answer any questions put to him; indeed, he may decline to listen to the *Page 827 
questions at all and may go on his way. . . . He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. . . . If there is no detention — no seizure within the meaning of the Fourth Amendment — then no constitutional rights have been infringed."
Royer, 460 U.S. at 498, 103 S.Ct. at 1324. The United States Supreme Court has refused to extend Terry to custodial interrogations. In United States v. Brignoni-Ponce,422 U.S. 873, 881-82, 95 S.Ct. 2574, 2580-81, 45 L.Ed.2d 607 (1975), the Court stated, "The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause." Accord Dunaway v. New York, 442 U.S. at 212,98 S.Ct. at 2256, and United States v. Martinez-Fuerte,428 U.S. 543, 567, 96 S.Ct. 3074, 3087, 49 L.Ed.2d 1116 (1976).
Indicative of the application of these principles isUnited States v. Tookes, 633 F.2d 712, 715 (5th Cir. 1980), where the court summarized the facts, as follows:
 "[T]he defendant had been detained on the ground by an officer with pistol in hand. Not only had he been frisked, but he had also been searched from head to toe, even to the removal of his shoes and socks. He had been ordered into the back seat of a government vehicle and was thereafter driven some distance, perhaps even around the block. He testified that he had no doubt that he was not free to go, a reasonable perception in view of the facts mentioned here."
The court held, in Tookes, that "[t]he seizure here went far beyond the limited on-the-street frisk for weapons upheld inTerry v. Ohio." Id.
In the case sub judice, we are, likewise, convinced that appellant's encounter with the Mobile police officers went far beyond the scope of Terry and § 15-5-30. Appellant was not questioned concerning his presence at the scene, nor offered the opportunity to explain his activities, which the authorities considered "suspicious." Appellant was stopped, placed against a wall, and searched; money was removed from his pockets without justification; and he was then placed in a police vehicle, with two other individuals, while the police searched the Chrysler. Appellant was required to deliver his keys to the officers and required to put on a jacket found in the Chrysler. The testifying officer admitted that appellant was not free to leave when placed in the patrol car, and he also admitted that the officers had nothing upon which to predicate a charge until the search of the vehicle was completed. These facts established that the Mobile police officers' actions were highly intrusive and not sufficiently limited in scope or duration to satisfy the conditions of an investigative seizure authorized by Terry.
We also note, for Terry purposes, that the record is void of any testimony concerning the propriety of the weapons frisk. Once a person, suspected of criminal activity, has been "stopped," the second prong of the Terry analysis allows the police officer to conduct a frisk for weapons "where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry,392 U.S. at 27, 88 S.Ct. at 1883. In Sibron v. New York, 392 U.S. 40, 64,88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968), the Court stated:
 "The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."
In evaluating Terry and Sibron, the Fifth Circuit stated:
 "Both opinions make it clear that the 'particular facts' must be specific and articulated. And at minimum, they also *Page 828 
require that they must be facts which, when viewed objectively, would give rise to a reasonable belief (in a prudent, experienced officer) that the individual confronted might be armed and dangerous. . . . But more . . . the two cases require that the officer who conducted the patdown must actually have inferred from the facts available, in light of his experience, that the individual searched might have been armed and potentially dangerous."
United States v. Tharpe, 526 F.2d 326, 328 (5th Cir. 1976). "The 'narrow scope' of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked. . . ." Ybarra v.Illinois, 444 U.S. 85, 94, 100 S.Ct. 338, 343, 62 L.Ed.2d 238
(1979). "It is clear that an officer who has the right to stop a person does not necessarily have a concomitant right to search that person." Post, 607 F.2d at 851. "To justify a stop and frisk, the government must focus on each person and demonstrate that as to that individual there is a specific cause to fear the justifying harm." United States v. Davis,482 F.2d 893, 906 (9th Cir. 1973). In the case sub judice, the State has failed to establish this prong of the Terry analysis; the State falls short of adducing any objective facts which would have given rise to a reasonable belief that appellant might be armed and potentially dangerous. The search of appellant's person was, therefore, unconstitutional and illegal. We recognize that under certain circumstances, for example, where the authorities are dealing with an individual suspected of trafficking in large quantities of narcotics, they may be authorized to automatically frisk the suspect. Travis v.State, 381 So.2d 97, 101 (Ala.Cr.App. 1979), cert. denied,381 So.2d 102 (Ala. 1980); W. LaFave, Search and Seizure § 9.4(a) (1978). However, the facts of this case fall short of establishing sufficient facts to justify invoking an automatic frisk rule.
It is clear from the record, that the authorities had no intention of conducting a Terry stop. Appellant was detained and not free to leave from the inception of the stop, and this is made most clear by his being placed in a police vehicle, following an illegal search of his person, which resulted in the finding of nothing indicating criminal activity. Appellant was further required to produce his keys and try on a jacket. The "stop and frisk" in this case cannot be justified underTerry or § 15-5-30.
 II
The facts of the instant case show that appellant was arrested when placed in the police vehicle. The actual point of arrest is usually a question of fact. Sibron v. New York,392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Foy v. State,387 So.2d 321 (Ala.Cr.App. 1980). An arrest occurs when one's freedom of movement has been curtailed. Henry v. United States,361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). In Waldrop v.State, 462 So.2d 1021, 1028 (Ala.Cr.App. 1984), cert. denied,472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1985), we quoted 6A C.J.S. Arrest § 2 (1975), which defined "arrest" as:
 "An arrest is the taking, seizing, or detaining the person of another by touching, or by any act which indicates an intention to take him into custody and subject the person arrested to the actual control and will of the person making the arrest, or any deprivation of the liberty of one person by another or any detention of him, for however short a time, without his consent, and against his will, whether it was by actual violence, threats, or otherwise. (Emphasis added.)"
Appellant was taken into custody and subjected to the actual control and will of the arresting officer when he was placed in the patrol car and was not free to leave thereafter.
 III
Having determined that appellant was arrested, we must review the facts to determine if probable cause existed to support the arrest. An arrest, or custodial interrogation, not supported by probable cause is violative of the Fourth and Fourteenth *Page 829 
Amendments. Dunaway v. New York, supra.
 "An officer has probable cause to make an arrest when, at the time the arrest is made, the facts and circumstances within his knowledge, and of which he has reasonably trustworthy information, are sufficient to lead a prudent person to believe that the suspect is committing or has committed an offense."
Gord v. State, 475 So.2d 900, 902-03 (Ala.Cr.App. 1985). At the time of appellant's arrest, the only facts and circumstances known to the arresting officers were those supplied by the radio dispatch and the observations made by Grissett and Luther of appellant at or near the vehicle described in the radio dispatch. This radio dispatch was not enough to support a finding of probable cause because there was absolutely no verification of who made the initial complaint. Based on the facts presented in the record, we can at best only assume that the complaint was made by an unidentified informant. There was "absolutely no showing of the underlying circumstances which gave rise to the police radio dispatch." Spann v. State,494 So.2d 716 (Ala.Cr.App. 1985), aff'd, 494 So.2d 719 (Ala. 1986), and therefore, the dispatch alone did not give rise to a finding of probable cause to search appellant or the vehicle.
The additional observations made by the police authorities at the scene did not sufficiently elevate the facts learned from the radio dispatch to support a finding of probable cause. In this case, none of appellant's actions observed by Grissett and Luther were incriminating; these observations were not sufficient to lead a prudent officer to believe that appellant was committing or had committed a crime. Appellant's actions observed by the officers were fully consistent with innocent activity.
Thus, the only information of criminality came from an informant's tip over a radio dispatch, the basis of which was not developed at trial by credible evidence. See United Statesv. McLeroy, 584 F.2d 746, 748 (5th Cir. 1978). Applying the "totality of the circumstances analysis" of Illinois v. Gates,462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), we hold that the evidence, when viewed as a whole, does not provide, and would not have provided, a substantial basis for a finding of probable cause to arrest this appellant.
Appellant's arrest was not based on probable cause and, therefore, all seized items, the seizure of which was dependent on appellant's arrest, were due to be suppressed. The evidence linking appellant to the vehicle and the contraband contained therein was the fruit of this illegal arrest and was also due to be suppressed. The trial court erred in denying appellant's motion to suppress this evidence.
The attorney general may argue that even if there was an invalid arrest, the illegality of the arrest did not taint the discovery of the contraband in the vehicle. The question is whether the connection between the illegal arrest and the discovery of the evidence has become so attenuated as to dissipate the taint and insure the admissibility of the evidence. In resolving this question, in the instant case, taking into consideration the guidelines set forth by the United States Supreme Court and followed by the Fifth Circuit Court of Appeals in Tookes, 633 F.2d at 716, we find that the connection between appellant's arrest and the discovery of contraband in the vehicle was not so attenuated as to dissipate the taint of appellant's illegal arrest. While the contraband may have inevitably been discovered, without the arrest of appellant, the distance and time proximity of the arrest and the finding of the contraband make it clear that the two are fatally interrelated. The seized contraband should have been suppressed and appellant's conviction based on that evidence cannot stand.
 IV
Following appellant's arrest for marijuana and hydromorphone hydrochloride, proceedings were instituted on September 26, 1984, to revoke his probation in four prior unrelated cases. Appellant contends that the revocation of probation in these cases is due to be reversed because the legal evidence *Page 830 
failed to prove that he violated the terms of his probation. We disagree.
Strict rules of evidence are not required in probation revocation hearings. Therefore, evidence which would be considered inadmissible in a criminal prosecution may be considered in either probation or parole hearings. Gagnon v.Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973);Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593,33 L.Ed.2d 484 (1972); Armstrong v. State, 55 Ala. App. 37, 312 So.2d 607
(Ala.Cr.App. 1974), aff'd. in part, rev'd. in unrelated part,294 Ala. 100, 312 So.2d 620 (1975).
A probation revocation hearing is held for the purpose of determining whether a probationer's good behavior has been tainted by bad conduct at some point in time during his probation. Absent gross abuse of discretion, a trial judge's ruling in a probation revocation hearing will not be disturbed on appeal by this court. Rice v. State, 429 So.2d 686
(Ala.Cr.App. 1983).
Evidence presented in a probation revocation proceeding must only reasonably satisfy the trial judge that the probationer violated the terms of his probation. Armstrong, supra; Dixon v.State, 42 Ala. App. 341, 164 So.2d 509 (1964); Fiorella v.State, 40 Ala. App. 587, 121 So.2d 875, cert. denied, 270 Ala. 737, 121 So.2d 881 (1960). In Smith v. State, 445 So.2d 573
(Ala.Cr.App. 1984), this court held that if there is ample evidence in the record to support the trial court's decision to revoke an individual's probation, then the fact that the case is subsequently nolle prosequi will have no bearing on the revocation of probation. The rationale of Smith is applicable in the present case, and the analogy is clear. Furthermore, a majority of cases from state and federal jurisdictions refuse to apply the exclusionary rule to improperly seized evidence in probation revocation hearings. United States v. Hill,447 F.2d 817 (7th Cir. 1971); United States v. Allen, 349 F. Supp. 749
(N.D.Cal. 1972); People v. Atencio, 186 Colo. 76, 525 P.2d 461
(1974); People v. Watson, 69 Ill. App.3d 487, 26 Ill.Dec. 19,387 N.E.2d 849 (1979); State v. Lombardo, 306 N.C. 594,295 S.E.2d 399 (1982). Likewise, the United States Supreme Court cases of Morrissey and Gagnon strongly suggest that the exclusionary rule does not apply to improperly seized evidence in parole and probation revocation hearings. This court has held in the past that the exclusionary rule, as it applies to the failure to give Miranda rights, does not apply in probation revocation hearings. Thompson v. State,356 So.2d 757 (Ala.Cr.App. 1978).
While it is true that the evidence of appellant's possession of contraband in the case at bar was obtained as the result of an illegal arrest, and thus, should have been suppressed at appellant's trial, the district court did not commit error when it considered such evidence at appellant's probation revocation hearing and based its revocation on such evidence. See Annot., 77 A.L.R.3d 636 (1977), for an excellent annotation regarding probation revocation based upon evidence obtained through illegal searches and seizures.
The revocation orders read in part, as follows: "On the stipulation of facts as set forth by the defendant, the court is reasonably satisfied from the evidence that the defendant has violated the provisions of the suspended sentence originally imposed." (Emphasis added.) The judgment of the district court in revoking appellant's probation in each of those cases was proper.
Based on the foregoing, the judgment in case 1 Div. 934 is due to be, and it hereby is, reversed and the case remanded; the judgments in those four appeals designated here as case 1 Div. 915 are due to be, and they hereby are, affirmed.
1 Div. 934, REVERSED AND REMANDED;
1 Div. 915, AFFIRMED.
All Judges concur.
[1] The State has carefully avoided citing Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); however, the cases relied upon by the State apply a Terry analysis to § 15-5-30. Section 15-5-30 is substantially similar to the New York stop and frisk statute discussed in Sibron v. New York, 392 U.S. 40,43-44, 88 S.Ct. 1889, 1892-1893, 20 L.Ed.2d 917 (1968), where the Court declined to review the constitutionality of the statute and held, id. at 61, 88 S.Ct. at 1902, the following:
 "The question in this Court upon review of a state-approved search or seizure is not whether the search [or seizure] was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment."
Accordingly, in this case we are not inclined to rely solely on § 15-5-30, for it is clear that the dictates of the Fourth and Fourteenth Amendments are controlling on this issue. *Page 831