ON RETURN TO REMAND
McMILLAN, Judge.
This cause was remanded to the trial court for a determination of whether the barn and garden, in which the marijuana was found, were within the curtilage of the appellant’s home. 554 So.2d 1139. The trial court found that the marijuana was not located within the curtilage of the appellant’s residence. The trial court found that the location of the marijuana was more than 100 yards from the appellant’s residence and that state’s witness, James Horsley, was more than 100 yards from the appellant’s residence when he first observed the marijuana and was, therefore, not within the curtilage of the appellant’s residence.
“The historical underpinnings of the open fields doctrine also demonstrate that the doctrine is consistent with respect for ‘reasonable expectations of privacy.’ As Justice Holmes, writing for the Court, observed in Hester [v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924)], the common law distinguished ‘open fields’ from the ‘cur-tilage,’ the land immediately surrounding and associated with the home. See 4 W. Blackstone, Commentaries *225. The distinction implies that only the curtilage, not the neighboring open fields, warrants the Fourth Amendment protections that attach to the home. At common law, the curtilage is the area to which extends the intimate activity associated with the ‘sanctity of a man’s home and privacies of life,’ Boyd v. United States, 116 U.S. 616, 630 [6 S.Ct. 524, 532, 29 L.Ed. 746] (1886); and therefore has been considered part of the home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediate adjacent to the home will remain private. See e.g., United States v. Van Dyke, 643 F.2d 992, 993-994 (CA 4 1981); United States v. Williams, 581 F.2d 451, 453 (CA 5 1978); Care v. United States, 231 F.2d 22, 25 (CA 10), cert. denied, 351 U.S. 932 [76 S.Ct. 788, 100 L.Ed. 1461] (1956). Conversely, the common law implies, as we reaffirm today, that no expectation of privacy legitimately attaches to open fields.”
Oliver v. United States, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984).
“Drawing upon the Court’s own cases and the cumulative experiences of the lower courts that have grappled with the task of defining the extent of a home’s curtilage, we believe that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. See California v. Ciraolo, 476 U.S. 207, 221 [106 S.Ct. 1809, 1817, 90 L.Ed.2d 210] (1986) (POWELL, J., dissenting) (citing Care v. United States, 231 F.2d 22, 25 (CA 10), cert. denied, 351 U.S. 932 [76 S.Ct. 788, 100 *910 L.Ed. 1461] (1956); United States v. Van Dyke, 643 F.2d 992, 993-994 (CA 4 1981)). We do not suggest that combining these factors produces a finely tuned formula that, when mechanically applied, yields a ‘correct’ answer to all extent-of-curtilage questions. Rather, these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration — whether the area in question is so intimately tied to the home itself that it should be placed under the home’s ‘umbrella’ of Fourth Amendment protection. Applying these factors to respondent’s barn and to the area immediately surrounding it, we have little difficulty in concluding that this area lay outside the curtilage of the ranch house.”
United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987). The court in United States v. Dunn, supra, based its decision that the barn was not within the curtilage of the ranch on the following facts: the barn was located 60 yards from the house and “this substantial distance supports no inference that the barn should be treated as an adjunct of the house”; the barn did not lie within the area surrounding the house that was enclosed by a fence; the law enforcement officials had aerial photographs indicating that the barn was not being used for the intimate activities of the home; and the respondent “did little to protect the barn area from observation by those standing in the open fields.” As to the latter consideration, the Court noted that the fences around the barn were designed to corral livestock and not to prevent someone from observing what lay inside the fenced area.
In the present case, the trial court notes that the location of the marijuana was more than 100 yards from the appellant’s residence, clearly indicating that the area in which it was located was not to be treated as an adjunct of the house. There is no indication that the appellant took any measures to protect the area from observation by those standing in open fields. Therefore, based on the facts in the present case, the trial court correctly concluded that the location of the marijuana did not fall within the curtilage of the appellant’s residence and therefore that the appellant was not entitled to Fourth Amendment protection as to the marijuana found at that location. Thus, the trial court properly denied the appellant’s motion to suppress the evidence, as the marijuana was properly seized pursuant to the open fields doctrine.
The appellant raises other arguments concerning his conviction; however, as noted in our original opinion, the appellant pleaded guilty to trafficking in cannabis, and reserved the right to appeal the following issue: “whether the overruling [of the] motion to suppress was legal or, in other words, the issue being whether the [appellant’s] Fourth Amendment rights were violated.”
On appeal, the appellant raises issues concerning the validity of his confession and whether his confession and the evidence seized should have been admitted. His argument concerning the seizure of the evidence is based upon his contention that it should have been suppressed under the “fruit of the poisonous tree” doctrine, because he was illegally arrested. He further argues that the officers could have procured a warrant for the search of his property and that, therefore, the warrant-less search was unreasonable. However, as to this latter issue, there are exceptions to the warrant requirement, such as the plain view exception, which clearly applied in this case. See e.g., Spann v. State, 494 So.2d 716, 718 (Ala.Cr.App.1985), affirmed, 494 So.2d 719 (Ala.1986). “[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only ‘unreasonable searches and seizures.’ The relevant test is not the reasonableness of the opportunity to procure a warrant, but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by a per se rule; each case must be decided on its own facts.” South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). As previously noted, the search of the appellant’s land and seizure of the marijuana plants was proper in this case.
*911 As to the other issues raised by the appellant, these issues are waived pursuant to the appellant’s guilty plea. Generally, a plea of guilt waives all nonjurisdictional defects as issues for review. Bailey v. State, 375 So.2d 519 (Ala.Cr.App.1979). A defendant may, however, specifically reserve an issue for appellate review when entering a plea of guilty. Jackson v. State, 452 So.2d 895, 896 (Ala.Cr.App.1984); Sawyer v. State, 456 So.2d 110, 111 (Ala. Cr.App.1982), reversed, 456 So.2d 112 (Ala. 1983). Because these matters were not reserved for review when the appellant entered his guilty plea, they are now waived.
OPINION EXTENDED; AFFIRMED.
All the Judges concur.